WILLIAM K. NOBLE, Appellant, v. C. A. BUDDY et al., Respondents.

Kansas City Court of Appeals, December 4, 1911.

1. **SALES: Warranty: False Representation: Instruction.** In order to constitute false representations as to the quality of goods, the representations must be made to the party relying on them, that he relied on and acted on them and that they were made to deceive, and where it is shown that the purchaser did not rely on the representations but examined the goods, although the opportunity for doing so was somewhat restricted, and that the seller had never seen them and knew nothing of their quality, an instruction to the effect that the seller had warranted the quality and condition of the goods, was erroneous.

2. ———: **Contract: Warranty.** Where an offer to sell barrel hoops, then in a car, contained in a letter which states that the quality was all right, was not accepted, but the sale was made on another and different proposition without any representation of quality, there is no warranty as to quality.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin,* Judge.

REVERSED.

*F. B. Fulkerson, J. A. Graham* and *Hugh C. Smith* for appellant.

There is no warranty either express or implied in this case. Galbreath v. Carnes, 91 Mo. App. 512; Matlock v. Meyers, 64 Mo. 531; Anderson v. McPike, 86 Mo. l. c. 300; Norris v. Reinstedler, 90 Mo. App. 626; Brown v. Baird (Okla.), 48 Pac. 180. The contract was based on inspection and offer by appellant not on any warranty. Muhr et al. v. Eagle, 7 Mo. App. 590; Anthony v. Potts, 63 Mo. App. l. c. 520; Mechem on Sales (1 Ed.), sec. 232, p. 216; Byrd v. Press Co., 90 Ga. 542, 16 S. E. 267.

*Culver, Phillip & Spencer* for respondent.

BROADDUS, P. J.—The plaintiff sues to recover of the defendants as a firm the sum of $447.18. The petition alleges that on or about the 2d of December, 1908, plaintiff sold and delivered to defendants at St. Joseph, Missouri, one car load of wooden barrel hoops, 57,700 in number, at the agreed price of $7.75 per thousand, or in total $447.18; that afterwards on the — day of December, 1908, defendants paid $82.15 freight and demurrage charges on said hoops, for which they are entitled to credit.

The answer admits the purchase of the hoops from plaintiff at the time and at the price stated in the petition, and that less said sum of $82.15 they have refused to pay. By way of counterclaim and set-off they allege that at the time the hoops were sold to them, they were in a certain car; that plaintiff offered to sell the same to defendants and for the purpose of inducing defendants to purchase the same, represented

and warranted to defendants that their quality was all right and that they were six feet in length; that on account of the fact that the hoops were, at the time they were offered to defendants, stored in the car, it was impossible for the defendants to thoroughly inspect any of them except those that were near to the door of the car and which could be inspected by opening the door thereof; that upon inspecting the hoops which were exposed to view and finding the same to be six feet in length and as represented and warranted by plaintiff, defendants offered to purchase them, relying upon the representation and warranty of plaintiff that the quality of said hoops was all right and that they were six feet in length; that immediately thereafter plaintiff directed the railroad company to deliver the hoops to defendants and that defendants unloaded them from the car and they then discovered that fully one-third of them were culls and broken pieces and that about eighty per cent of them had been wet and were then frozen; that thereupon defendants immediately notified plaintiff of their condition and also notified him that they would store them until they could be thawed out and dried and cured and their exact condition ascertained; that plaintiff made no reply to the notice and defendants stored the hoops and about the 1st day of May, 1909, when they were thawed out, defendants thoroughly examined them and reported their condition to the plaintiff and offered either to keep the hoops at their reasonable value or to return them to plaintiff upon the payment to defendants of the amount of said freight and storage charges; that plaintiff refused to receive the hoops and thereupon, defendants used as many of them as could be used, etc.; that the reasonable value of those so used was $115, and they claim they were injured in the sum of $250 by reason of the defective quality of the hoops.

The plaintiff resided at Fort Wayne, Indiana, and defendants resided at St. Joseph, Missouri. It ap-

pears that the car of hoops was shipped to St. Joseph by a concern that was indebted to plaintiff without receiving from him instructions so to do; and that plaintiff never saw the hoops and knew nothing about their quality or condition. The contract was made by letters and telegrams. The first letter from plaintiff to defendants is dated November 28, 1908, in which he offered to sell the hoops to defendants on four months' time at $8.35 per thousand. In this letter plaintiff stated as follows: "The quality of the stock is all right," etc., and requested defendants to wire him a proposition. On December 1st, defendants wired plaintiff: "Examined hoops very rough seven fifty delivered six months time best can offer." On the same day defendants also wrote plaintiff as follows: "Your letter at hand today and we sent our foreman to the different railroad yards and finally located the car at the Burlington yards. Inspection of the hoops revealed them to be very rough stock not fit for meal barrels. The only thing that we could do would be to carry them over till next season's apple crop if we have one which is a very uncertain proposition in this section;" and further made an offer of $7.50 per thousand delivered on six months' time. On the same day plaintiff sent defendants the following telegram: "Will sell car seven seventy-five terms six months. Wire quick if accept." On the next day defendants wired plaintiff as follows: "Accept your offer on car hoops release promptly will unload."

Defendants introduced evidence tending to show that when they were unloaded the hoops were not all right as to quality, but were defective and deficient as stated in their answer. The court gave two instructions asked by the defendants. In the first the jury are instructed that the statement in the letter of November 28, that the quality of the hoops, etc., was all right, amounted to a warranty. The court refused to

give seven instructions offered by plaintiff. The first relates to the question of false representations. The others with the exception of the last, apply to the question of warranty wherein the court in substance is asked to instruct that the warranty of the quality of the hoops was not shown. The last is in the nature of a peremptory instruction to find for plaintiff. The court, however, gave several other instructions at plaintiff's request which we do not deem it important to notice. The jury allowed defendants counterclaim and returned a verdict for plaintiff in the sum of $182.24. From the judgment plaintiff appealed.

We are of the opinion that there was no express warranty of the hoops by the plaintiff, even if it be conceded that the language in plaintiff's letter first written to defendants, that their quality was all right, for the reason that the proposition to sell in that letter was not accepted by the defendants, but that the sale was made upon another and different offer in which there was no representation made as to their quality. [Ransberger v. Ing, 55 Mo. App. 621; Duke v. Compton, 49 Mo. App. 304; Egger v. Nesbitt, 122 Mo. 667; 1 Mechem on Sales, secs. 220-232.] The refusal of defendants to purchase the hoops on the first proposition of plaintiff to sell and the acceptance of another and different proposition without any representation of quality constituted the contract. If defendants' instruction one means anything definite they were allowed to recover on a warranty as to quality. Yet they base their argument here upon the theory that they have the right to recover for the antecedent false representations contained in plaintiff's first letter. Their theory is, that although the first proposition of plaintiff does not constitute the contract between the parties, it was the inducing cause for the making of the subsequent contract. But we do not think there was any proof of false representations, nor that defendants

bought upon the representations of plaintiff as to the quality of the hoops. The rule is, in order to constitute false representations the representations must be made to the party relying on them, that he relied on and acted on them, and that they were made to deceive. [Wannell v. Kem et al., 57 Mo. 478.] In the first place, the defendants did not rely on such representations as they examined the hoops before purchasing. It is true their means for the examination were somewhat restricted and not thorough as they were loaded in a car, but the fact remains that they were trusting to their own knowledge however imperfect, and did not rely upon the representations made by plaintiff. In the second place, plaintiff had never seen the hoops and did not as a matter of fact know, so far as the evidence goes, either their condition or quality, therefore, there could have been no intent to deceive. In the absence of such knowledge the presumption is that there was no such intention.

Instruction one should not have been given as there was no warranty; and there being no false representations, the court should have instructed the jury to return a verdict for the plaintiff. The cause is reversed with directions to set aside the verdict and judgment and to render judgment for plaintiff for $365.03, together with interest from the 12th day of June, 1909. All concur.