## LINDSAY, Appellant, v. DAVIS, Respondent.

1. There must be a warranty or fraud to make the vendor of a horse with a secret malady responsible to the purchaser; the purchaser takes the risk of quality and condition, unless he protects himself by a warranty, or there has been fraud on the part of the vendor.
2. A warranty may be either verbal or written; when it rests upon oral proof, it is a question of intent, and, like any other fact, should be left to the jury.
3. A simple affirmation of soundness, or mere expression of opinion, does not constitute a warranty unless it is so intended and understood at the time.
4. Where, in a suit to recover damages for a fraudulent representation of soundness, the plaintiff avers in his petition that the disease constituting the unsoundness is glanders, he is bound to prove such allegation; although unnecessary, it is not immaterial when made.
5. Although the plaintiff in such case must show that the disease constituting the unsoundness is glanders, yet it is not necessary to show that the defendant knew that the animal sold by him was affected with the alleged form of disease; it is enough that he knew the animal was unsound.
6. It is for the jury to determine what constitutes an unsoundness.

### *Appeal from Henry Circuit Court.*

This is an action by Reuben T. Lindsay against Joseph Davis. The petition has two counts. In the first count the plaintiff sets forth the purchase of sixteen mares and a jack from the defendant; that defendant warranted said mares (except one) and the jack to be sound; that they were unsound and infected with a contagious disease called "glanders;" that said mare excepted from the warranty, defendant fraudulently represented to have been diseased with a disease called "distemper," a common and not dangerous disease; that defendant knew said disease was not distemper but was glanders; that said stock was unsound; that three of said mares have died of said disease; that plaintiff has been compelled to kill another to prevent the spreading of said disease; that he is damaged, &c.

In the second count of the petition, the plaintiff sets forth that on, &c., he was the owner of a large amount of stock, &c.; that he purchased sixteen mares and a jack from the defendant; that defendant, on said sale and purchase, falsely

represented said animals to be sound, (except one mare which he said had been diseased with distemper;) "that said animals so represented by defendant to be sound were at that time unsound and defendant knew it; that they were diseased with an infectious, contagious and fatal disease called glanders; that defendant well knew that the mare, which he stated had had distemper, was then diseased, not with distemper but with glanders, and that the balance of said animals had been and were then exposed to and liable to have said disease, if they did not then have it; that defendant fraudulently concealed from plaintiff his knowledge touching the existence of said disease among said animals, and their exposure and liability thereto as above stated; that plaintiff, confiding in the representations of the defendant, made said purchase of defendant, took said animals to his farm, not knowing or even suspecting the existence of said disease among them, whereby said disease was communicated to plaintiff's other stock." The petition then proceeds to state the nature of the damage received.

Much testimony was adduced on both sides. Its character, so far as it throws light on the opinion of the court, will be seen from the opinion. The instructions asked by plaintiff, with the exception of one with respect to the measure of damages, were refused. The following is the third instruction asked for by plaintiff and refused: "3. If the jury find from the evidence that the mares and jack, or any or either of them at the time the plaintiff purchased them of defendant, were unsound and diseased with glanders, and defendant knew they were unsound and diseased, but did not disclose to plaintiff his information and knowledge in relation to said disease, but induced the plaintiff to buy them believing they were sound, and the plaintiff had not at the time equal means of knowledge and information in regard to the existence of said disease; and that plaintiff, without knowing of said unsoundness, placed said animals among his other stock, whereby they or any of them contracted said disease, and that any of them have since died of said disease, or

have been rendered of less value by their exposure to said disease or by having the same, the jury will find for the plaintiff, whether the defendant knew the disease was glanders or not."

The following are the instructions given for defendant: " 1. There is no evidence that the defendant warranted any of the animals sound at the time of the sale.  2. Unless the jury shall believe from the evidence that the defendant, at the time of the sale of the stock to plaintiff, knew that the distemper which it had was not a temporary, but an unsoundness occasioned by the glanders, they should find a verdict for the defendant.  3. Although the jury may believe from the evidence that the stock at the time of the sale to plaintiff by defendant was diseased with a disease called glanders, yet, if the jury believe from the evidence that the defendant did not know that it was glanders, but honestly believed that it was distemper, and in good faith merely gave it as his opinion that it was distemper, then they should find for defendant.  4. Although the jury may believe from the evidence that the stock sold by defendant to plaintiff was diseased, yet, unless that disease was the glanders, they must find for the defendant.  5. Although the jury may believe from the evidence that at the time of the sale of said stock by the defendant to plaintiff the same was diseased with a disease called glanders, yet unless they further believe from the evidence that defendant knew it, and did not disclose it, and concealed the same from plaintiff, or made some statement to the plaintiff which defendant knew was untrue or calculated to deceive plaintiff, they must find for defendant."

The jury found for defendant.

*Peyton & Loan*, for appellant.

I. The court improperly refused instructions asked by plaintiff.  The first instruction given for defendant was improperly given.  The evidence of Bruce tended to prove a warranty of soundness.  ( 26 Mo. 523 ; 18 Mo. 171.) The other instructions given for defendant are also erro-

neous. It was not necessary to a recovery by plaintiff that defendant should have known that the stock sold plaintiff was diseased with glanders. The plaintiff does not state in his second count that defendant knew the stock sold had the glanders. The charge is that the stock were unsound, and that defendant, knowing them to be unsound, fraudulently represented them to be sound. The other statements in said count with reference to said unsoundness are only by way of aggravation and need not be proved. (1 Greenl Ev. § 61; Barnum v. Van Dusen, 16 Mo. 204.) It is not charged that defendant knew the unsoundness to be glanders. It was not necessary to prove that defendant knew the unsoundness to be glanders. (16 Conn. 204.)

*Ryland & Son, Johnson, Freeman & Wright,* for respondent.

I. There was no warranty in the sale. The words used do not amount to a warranty. (2 East, 314; 9 Watts, 55; Moses v. Mead, 1 Denio, 385; Emerson v. Brigham, 10 Mass. 207; Sweet v. Colgate, 20 Johns. 203; Foster v. Caldwell, 18 Verm. 176.) The testimony did not make it appear that defendant knew the animals were diseased when sold; nor does it appear that he made any misrepresentations, or any artifices or inducements to plaintiff to induce him to buy. The plaintiff was bound to prove the unsoundness as charged. The damages charged are too remote and consequential. (12 Mo. 313; 13 Mo. 517; Sedgw. on Dam. 135.)

NAPTON, Judge, delivered the opinion of the court.

There were two questions involved in the trial of this cause; and the leading principle pervading the instructions, which the court gave to the jury, was undoubtedly correct. One question was, whether there was a warranty; the other was, whether there was any fraud. There must be a warranty or fraud to hold the vendor of a horse with a secret malady responsible to the purchaser. The maxim that a sound price implies a sound commodity, although a favorite

one in the civil law, and occasionally borrowed to settle questions under our system, has never met with general favor, or taken root as a permanent part of the common law. Our law is, that the buyer takes the risk of quality and condition, unless he protects himself by a warranty, or there has been a false representation fraudulently made by the vendor.

This principle was the one upon which the court proceeded in trying this case, and, so far, the action of the court was unexceptionable. In carrying out the principle, however, there were instructions given to which exceptions were taken, and the propriety of these instructions presents the only point for our consideration.

In relation to the alleged warranty, the court disposed of the subject by instructing the jury that there was no evidence to support the allegation. A warranty may be verbal or written; when it is reduced to writing, it is the province of the court to expound it; but when it is merely verbal, it is for the jury to interpret the words of the witness who testifies concerning it. The court may explain to the jury what constitutes a warranty, when it rests altogether on oral proof; but as no particular form of words is essential, and it is mostly a question of intention on the part of both the vender and vendee, that question, like any other question of fact, must be left to the jury.

Of course, when there is no evidence of any such warranty, there can be no necessity for any instructions on the subject, and such was the opinion of the circuit court in this case. The only evidence on this point was that of a single witness—the only one present at the trade between plaintiff and defendant—who testified that, in answer to a question, put by the plaintiff to the defendant, as to whether "the stock was sound," the defendant replied that "*he thought* it was."

It appears to be the prevailing opinion, both in this country and in England, that a simple affirmation of soundness does not constitute a warranty, unless it is so intended and understood at the time. In McFarland v. Newman, 9 Watts,

55, Judge Gibson said that such a naked averment was "neither a warranty nor evidence of a warranty." In connection with other circumstances, the learned judge admitted that "it certainly may be taken into consideration; but the jury must be satisfied from the whole that the vendor actually, and not constructively, consented to be bound for the truth of his representation. Should he have used expressions fairly importing a willingness to be thus bound, it would furnish a reason to infer that he had intentionally induced the vendee to treat on that basis; but a naked affirmation is not to be dealt with as a warranty, merely because the vendee had gratuitously relied on it; but not to have exacted a direct engagement, had he designed to buy on the vendor's judgment, must be accounted an instance of folly."

It is true that at a trial at *nisi prius* in England, Lord Ellenborough seemingly advanced a very different doctrine, (4 C. & P. 45,) where the expression of a horse-trader in selling his horse was, "*I never warrant;* but he is sound as far as I know;" and this was held by the learned judge a warranty." But this expression of the vendor was in answer to a direct question put to him by the vendee, "Will you warrant him?" and Lord Ellenborough may have felt himself at liberty to treat the reply as evasive and intended to produce the impression of an affirmative answer. However this may be, it is believed the decision has not been followed in England, and it has been criticised with much severity by Chief Justice Gibson, and treated as a complete perversion of the man's language, and entirely unjustifiable.

The answer of the defendant, Davis, in this case, as testified to by the witness, was not even an affirmation of soundness, but a mere expression of opinion. Whether the circumstances under which it was made, together with the prior and subsequent conversation, would have any tendency to control the natural and obvious meaning of the language used, would be a matter of inquiry for the jury, if there was any evidence whatever tending to throw any doubt upon the agreement and understanding of the parties. We pass by

this branch of the subject, however, for the reason that our examination of the evidence has not satisfied us that the question of warranty could have had much influence in the determination of the case, and that whether tried by a court or a jury, the result would probably be the same. We have referred to it principally to state, that where a warranty is insisted on, depending altogether or in part on oral proof, the question properly belongs to the jury, and if there is any evidence tending to establish the allegation, the court should submit the matter to the jury, with such explanations as the facts in evidence might justify.

The second and main ground of objection to the instructions of the court is based upon the construction which the court seems to have given to the allegations of the petition concerning fraudulent misrepresentations. The second count of the declaration avers that the animals purchased by plaintiff were unsound, and that defendant knew it. There is, then, a further averment that the disease constituting the unsoundness was glanders. This last averment was unnecessary; whether the disease was glanders or distemper, or any other infirmity not obvious upon inspection, which impaired the value of the mares for the purposes contemplated by the parties to the trade, the responsibility of the vendor for a false and fraudulent misrepresentation of their condition was alike in either contingency. But as the pleader thought proper to aver the character and name of the disease, he was bound to prove it. An averment may be unnecessary and yet not immaterial or impertinent, when made; and unnecessary averments, if they are not also immaterial, must be proved.

What constitutes an unsoundness is a matter for the jury. It is not the province of the judge to determine the character of diseases. When we say, therefore, that distemper would have been an unsoundness as well as glanders, we mean, of course, if the jury should so consider it from the evidence submitted to them. Whether glanders is an aggravated form of distemper or a distinct disease, or whether

either of the diseases would constitute an unsoundness, are questions of fact with which the court has nothing to do.

The objection to the instructions is, that they required the plaintiff to prove, not only that the alleged disease was glanders, but that the defendant knew that the animals had that specific disease. There is no averment in the petition to this effect. It is alleged that the mares and jack were unsound, and that the defendant knew *they were unsound;* but it is not said that he was acquainted with the specific disease of which, it is said, a portion of the animals died, and with which, it is averred, they were all affected at the time of the sale. It was not material that the defendant should have been acquainted with the nature or name of the disease, if disease there was; it was enough that he knew the animals were unsound, if, indeed, the fact was so. The fraud was the same, if the defendant stated the animals to be sound when he knew them to be unsound, whether the unsoundness turned out to be distemper or glanders, or any other form of disease. The plaintiff avers in this case that the disease was glanders, but he does not aver that the defendant knew that fact; but merely that the defendant knew them to be unsound. We can very well imagine that the animals may have had the glanders, and that the defendant was well apprised of their unsound condition, but may have been totally ignorant of that specific disease and all its characteristics. In that event, he would be justly held responsible for a false representation, although under the instructions given by the court upon the trial, it is obvious that, upon the hypothesis named, the jury were bound to find for the defendant.

The third instruction asked by the plaintiff should have been given, and the second, third and fourth given for the defendant ought to have been refused. We shall therefore remand the case for a new trial.

Judgment reversed and case remanded. The other judges concur.