ADOLPHUS RANSBERGER, Respondent, v. JOHN ING, Appellant.

Kansas City Court of Appeals, January 8, 1894.

1. **Sales:** WARRANTY: COMMENDATIONS: INTENTION: JURY QUESTION. Mere assertions of the quality or condition of a chattel at the time of a sale is not, as matter of law, a warranty, but is merely evidence thereof as it may tend to show the intention of the parties, which is a question for the jury.

2. ———: ———: ADVERTISEMENT OF AUCTION. The statement in the posted notice of an auction sale that certain "shoats were in good health and condition," is not a warranty of their condition at the time of the sale; as a warranty, though called a collateral untertaking, yet forms a part of the contract by agreement of the parties at the time of sale.

*Appeal from the Saline Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED AND REMANDED.

*Leslie Orear, Boyd & Murrell* for appellant.

(1) It was error for the court to instruct, that the
description of the property contained in the advertise-
ment warranted its quality, and that the advertise-
ment warranted the hogs to be sound on the day of the
sale, (twenty-one days after the advertisement)
although the evidence might show that the purchaser
relied on such advertisement, unless it should be
further shown by the evidence that the seller intended
the advertisement to be a warranty, or knew that the
buyer regarded it as such, or that it formed the basis
of the contract. It was not contended on the trial in
the circuit court that the advertisement was so intended
by defendant, or so understood by plaintiff. *Engar v.
Dawley,* 19 Atl. Rep. 478; Benjamin on Sales, 610.
(2) The advertisement is no part of the conditions of
sale, and does not bind the vendor, unless expressly
made a part of the contract. 1 Lawson on Rights and
Remedies, sec. 212; *Ashcom v. Smith,* 21 Am. Dec.
437; *Bartlett v. Hoppock,* 34 N. Y. 118; s. c., 88 Am.
Dec. 428.

*R. B. Ruff, Jas. Cooney* and *L. W. Scott* for
respondent.

GILL, J.—This is an action for damages on an
alleged warranty in the sale of certain young hogs,
sold by defendant to plaintiff, December 10, 1891.
The evidence discloses about the following state of
fact: Defendant Ing, when about moving from his
farm in Saline county, on November 20, 1891, posted

certain printed handbills in the neighborhood advertising a public sale on the premises of a lot of stock and farming implements, and among these the bills named *"forty-five head of shoats, all in good health and condition."* The sale was advertised to come off on December 3, but was postponed by another notice to the tenth day of December. The plaintiff saw and read the bills and appeared at the sale and there bought the shoats. Subsequently a large part of the hogs died with the disease commonly known as "hog cholera." There was evidence tending to prove that the hogs were diseased at the date of the sale, and there was likewise testimony tending to prove the contrary. Plaintiff testified that when the hogs were put up for sale, defendant Ing told the auctioneer, "to make the announcement that the hogs were sound and all right," and that it was so stated. In this the plaintiff was corroborated by other witnesses. On the other hand, the auctioneer and other witnesses for the defense, swore that he only stated that "they were a nice lot of shoats; that he thought they were healthy and that they would show for themselves," etc.

The case was submitted to the court, sitting as a jury, on the following declaration of law, given at the plaintiff's instance: "That, if the court sitting as aforesaid believes from the evidence that defendant had a public sale of personal property on the tenth day of December, 1891, and that he advertised the same by printed handbills describing the property to be sold; when and where it was to be sold, and afterwards postponed said sale to the tenth of December, 1891, and that in said printed handbills was advertised to be sold with other property forty-five shoats and that said handbills contained the statement of and concerning said shoats, that all were in good health and condition; then said statement of and concerning said shoats

was a warranty that all of said shoats were at the time of their sale free from all disease; and, if the court shall further believe from the evidence that plaintiff saw and read said handbills and said statement of and concerning said shoats, and attended said sale and purchased said shoats relying upon the statement aforesaid contained in defendant's sale bills as to the health and condition of said shoats, and that at the time of said purchase, said shoats or any of them were diseased or in any manner affected with disease, which was afterwards the cause of any of them dying, then plaintiff is entitled to recover in this suit damages for all of said shoats that died from said disease.''

There was a finding and judgment for the plaintiff and defendant appealed.

From the foregoing instruction it appears that the case was tried on a misconception of the law, and for that reason the judgment must be reversed. The theory embodied in this declaration by the court is, that where the vendor in an auction sale shall in the antecedent printed notice state the quality of the chattel, then such statement shall be deemed a warranty to those purchasing at the sale, thereafter made, regardless of what may be said by the vendor at the time of such sale.

This is not the law. In the first place the court is not justified in declaring that a mere assertion of quality or condition of a chattel at the time of sale is, as matter of law, a warranty. It may be regarded as evidence tending to establish a warranty, but can hardly be denominated such as matter of law. The question is, as in other cases of contract, what was the *intention* of the parties. ''This intention is a question of fact for the jury, to be inferred from the nature of the sale and the circumstances of the particular case. Benjamin on Sales, sec. 613. The important and difficult

question is, many times, to determine whether the vendor means to state a *fact* upon which the vendee shall rely, or intends merely to give his opinion, or express his judgment as to the condition or quality of the thing sold. The first may be a warranty; the second is not.

The instruction has, however, a more serious vice than the one just noticed. It declared that because the handbills, posted by the defendant some three weeks prior to the sale, contained the statement that said "forty-five shoats were in good health and condition," then such statement was a warranty that said hogs were at the time of their sale free from disease. This was manifestly erroneous. A warranty, though called a collateral undertaking, yet forms a *part of the contract* by agreement of the parties. "It follows, therefore, that antecedent representations, made by the vendor as an *inducement* to the buyer, but not forming part of the contract when concluded, are not warranties." Benjamin on Sales, sec. 610.

Now this handbill, advertising a future sale of defendant's hogs, could, at most, only amount to an antecedent representation of the quality and condition of the shoats as they were when the bills were circulated; and this statement could not be construed as any part of the contract subsequently entered into between plaintiff and defendant, unless expressly made so at the time of sale. 1 Lawson on Rights and Remedies, sec. 212; *Ashcom v. Smith*, 2 Penr. & Watts (Pa.), 211; Riddle on Warranty in Sale of Chattels, sec. 37–39.

The office of such advertisement is simply to *induce* the buyer to attend the future sale, and any representation as to quality of the goods to be sold contained in the published notice, will not be considered

as a part of the contract, unless imported into the sale at the auction. The test is, what was the contract between the vendor and vendee *at the time of the sale.* Were the goods then sold with or without a warranty as to quality.

Now as to whether or not there was a warranty of the hogs when they were actually sold at auction, the evidence is conflicting,—that of the plaintiff tending to prove an intention, on defendant's part, to warrant the shoats to be free from disease, while that of the defendant tended to prove the contrary. That conflict must be settled by the triers of the facts.

The judgment must be reversed and the cause remanded for a new trial. All concur.