JOHN B. TURNER, Appellant, v. CENTRAL HARDWARE COMPANY, a Corporation.—No. 39214.—186 S. W. (2d) 603.

Division Two, April 2, 1945.

1184

*Henry C. Stoll* for appellant; *Orville Richardson* of counsel.

*John F. Evans* for respondent.

BARRETT, C.—In this personal injury action for damages for breach of warranty in the sale of a ladder the jury found for the appellant, John B. Turner, and assessed his damages at $15,000.00. The trial court sustained the respondent's, Central Hardware Company's, motion for a new trial on the assigned grounds that it should have given demurrers to the evidence and instructed the jury to find for the respondent. As indicated by its ruling on the motion for a new trial, it was the view of the trial court that there was no liability on the part of the Central Hardware Company, even though the facts were assumed to be in accordance with the appellant's evidence and as the jury found them.

It may have been that the appellant once relied upon and plead that he was entitled to recover because of negligence but the action is not one for negligence in selling a defective ladder. Shroder v. Barron-Dady Motor Co. (Mo.), 111 S. W. (2d) 66. There may have been a time when the appellant's theory of liability was that there had been a sale of the ladder for a particular purpose and a breach of an implied warranty against a latent defect. State ex rel. Jones Store Co. v. Shain, 352 Mo. 630, 179 S. W. (2d) 19. But, the action is against a retail merchant and the theory of liability is that there was a breach of an express warranty against a latent defect in the retail sale of the ladder. Lindsay v. Davis, 30 Mo. 406; Bell v.

S. S. Kresge Co. (Mo. App.), 129 S. W. (2d) 932, 935. And the decisive question is whether the jury found facts constituted an express warranty.

The Central Hardware Company is a retail store in St. Louis. The ladder was one of a stock of ladders purchased from the manufacturer, The J. R. Clark Company of Minneapolis. In April 1943 the Central Hardware Company inserted an advertisement in the St. Louis Post-Dispatch directing particular attention to the ladders it had for sale. The headlines of the advertisement were:

"SENSATIONAL FACTORY PURCHASE OF
'SAFETY FIRST'
LADDERS

"In designing our ladders the prime consideration was SAFETY— and that's exactly what you'll find in these splendid ladders!"

Three types of ladders were advertised; a " 'Clarkbilt' platform Stepladder," " 'Central's' Celebrate Extension Ladder" and the "2-in-1" ladder involved in this action. In a "boxed off" space there were two pictures of the ladder, as it appeared as a stepladder and as it looked as an extension ladder. The "2-in-1" ladders come in lengths of four, six and seven feet as stepladders, extending to twice their lengths when converted into extension ladders. As to the "2-in-1" ladders, the advertisement said:

"Imagine! A combination stepladder and straight ladder! Simply raise back section and you have straight ladder. Drop the back section and you have a 'Rid-Jid' reinforced stepladder. Mighty strong and durable!"

The appellant had been a plant guard for three years. He had started to resume his former "side line" occupation of cleaning wallpaper. On April 27th he took the advertisement and went to the Central Hardware to see about the "2-in-1" ladder they had advertised. The circumstances of the sale, according to Mr. Turner, were:

". . . I went up to the counter and asked the clerk if he had the particular kind of ladder illustrated right here; I pointed it out on the ad. . . . He came out from behind the counter, walked over with me to examine this particular ladder I had specified. . . . I asked him if he thought it would be good for the purpose I wanted it, and he asked what it was. I said I was cleaning wallpaper, I wanted to use it as a stepladder and extension ladder; and he said, 'I think that would be exactly what you want.' . . . I asked him about the strength of the ladder and he said 'As far as strength, they were tested to two hundred pounds or better.' . . . I asked him about the wood. I said, 'I don't know anything about wood; I will rely on your judgment,' and his answer was it was very good wood."

After a demonstration by the salesman, as to how the ladder worked, the appellant paid for a six foot "2-in-1" ladder. The next day he and his son-in-law presented his receipt and a colored man delivered them a ladder. They took the ladder to 6328a Botanical where he was to clean Mrs. Shirley's wallpaper. The following morning he used the ladder as a stepladder for about four hours. In the afternoon he put the ladder up in the stair well as an extension ladder and began cleaning the ceiling. He dropped some of his cleaning material and started to climb down after it. When he stepped on about the seventh rung "there was one snap," the ladder broke and Mr. Turner fell to the floor. The ladder broke through both rails. The cause of the ladder's breaking, according to expert testimony, was a defective side rail consisting of cross-grained wood in the side rail near the seventh rung.

In justification of the trial court's views the respondent contends that the evidence demonstrated nothing more than the ordinary retail sale of a manufactured article of common and general use, a ladder, accompanied by the customary and expected sales talk, none of which amounted to an express warranty against latent manufacturing defects. It is urged that in no event could the circumstances be construed as an express warranty against the hidden defect of cross-grained wood. The respondent separately considers the newspaper advertisement and the salesman's statements and says that the petition, the evidence and the instructions all negative the thought that the contents of the newspaper advertisement constituted an express warranty, that they were intended as such or were relied upon by the buyer. It is said that the salesman's statements, each of which the respondent segregates and separately analyzes, were mere expressions of opinion, puffing statements and dealer's talk,—all permissible in commendation of one's wares without the obligation of express warranty attaching.

The seller's privilege to puff his wares, enhance their quality and recommend their value, even to the point of exaggeration, is unquestionable, so long as his salesmanship remains in the field of "dealer's talk," commendation or mere expressions of opinion. 46 Am. Jur., Sec. 326, p. 506. Particularly do the obligations of warranty not attach when the seller's talk is confined to expressions of opinion and not affirmations of fact. 4 Williston, Contracts, Sec. 971A, p. 2691. In this connection the phrase "He thought" may be and often is, depending on the circumstances, a mere expression of opinion. Lindsay v. Davis, 30 Mo. 406. And, to say, in selling a horse that she "was a good mare," when considered with the circumstances, may not amount to a warranty of soundness. Matlock v. Meyers, 64 Mo. 531. Also, depending on the circumstances, assertions in handbills and advertisements as to the quality or condition of chattels may not, as a matter of law, be construed as warranties, and certainly not if

they do not become a part of the contract of sale. Compare De Gouveia v. H. D. Lee Mercantile Co., 231 Mo. App. 447, 100 S. W. (2d) 336; Ransberger v. Ing, 55 Mo. App. 621 and the note in 28 A. L. R. 191. But the seller's protection lies in the fact that his is the choice of language and action. The tendency is to restrict the meaning and interpretation of the seller's language, especially as to the. untruthful puffing of his wares, and hold "positive statements of quality affirmations of fact." 4 Williston, Contracts, Secs. 971, 971A; 1 Williston, Sales, Sec. 202.

▮ The meaning of single words or phrases may be of great importance, or even determinative, of whether there was a warranty or a mere expression of opinion or mere sales talk. And yet single words or phrases may not be segregated or detached from that part of the seller's talk, advertisement or circumstances constituting the sale and separately analyzed from their context in determining whether there was or was not an express warranty. Here it is not claimed that all prior negotiations and the terms of the sale were reduced to writing so that the warranty relied upon is contained in a single, unambiguous written contract. Bates County Bank v. Anderson, 85 Mo. App. 351. Here the sale consisted in the appellant's taking the advertisement to the seller's place of business, pointing to the illustration and engaging in conversation with the clerk and in determining whether there was or was not an express warranty all the circumstances of the sale are to be considered. Chouteau v. Missouri-Lincoln Tr. Co., 310 Mo. 665, 682, 276 S. W. 49, 53; Young v. Van Natta, 113 Mo. App. 550, 88 S. W. ˙123; Burns v. Limerick, 178 Mo. App. 145, 165 S. W. 1166; Blair v. Hall (Mo. App.), 201 S. W. 945.

▮ It was not requisite to the establishment of an express warranty that the words "warrant," "guarantee" or other special and technical terminology be employed in the sale. Graff v. Foster, 67 Mo. 512; Childs v. Emerson, 117 Mo. App., l. c. 675, 93 S. W., l. c. 287; Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo. App. 142, 150, 153 S. W. (2d) 106, 109. Usually a warranty is thought of and often is a contract or an express promise. 3 Williston, Contracts, Sec. 673; 1 Williston, Sales, Sec. 197; 46 Am. Jur., Sec. 299. But, in addition to an outright promise or contractual obligation, a positive affirmation of fact by the seller relating to the subject matter of the sale may constitute an express warranty if it induced the sale and the buyer relied upon it. Murphy v. Gay, 37 Mo. 536; Burns v. Limerick, 178 Mo. App., l. c. 150, 165 S. W., l. c. 1168; 1 Williston, Sales, Sec. 197; 4 Williston, Contracts, Sec. 970; 46 Am. Jur., Sec. 313. And, a petition which merely alleges facts showing a positive representation or affirmation by the defendant ▮ upon which the plaintiff relied and which induced him to make the purchase sufficiently states a cause of action for breach of an express warranty, (Kenney v. James, 50 Mo. 316) even though it does not appear from the pleading whether

an express or implied warranty is in fact relied upon. Long Bros. v. J. K. Armsby Co., 43 Mo. App. 253; Wertheimer-Swarts Shoe Co. v. McDonald, 138 Mo. App. 328, 122 S. W. 5.

The fact that the appellant inspected the ladder when he purchased it, or the fact that he and his son-in-law examined the ladder after it was purchased and delivered, or the fact that the appellant was more or less familiar with ladders in general, does not necessarily preclude him from relying upon an express warranty, if one was given. The defect, admittedly, was latent. It was not discoverable upon casual or even careful inspection, as the respondent's evidence shows. Thompson v. Botts, 8 Mo. 710. And, if the circumstances of the sale were as the appellant claims he did not rely upon his own independent judgment. It follows that if the spoken and written words relied upon constitute a positive affirmation of fact an express warranty was given and he may rely upon it even though he examined the ladder. J. A. Tobin Const. Co. v. Davis (Mo. App.), 81 S. W. (2d) 474; 4 Williston, Contracts, Sec. 973.

As the respondent points out, there was a label on the side of the ladder. It said, "Rid-Jid, General Utility All-Purpose .Two In One." The word "patented" was on the label and it said, "Manufactured by J. R. Clark Company, Minneapolis, Minnesota," so, as the appellant testified, he knew that the hardware company had not manufactured the ladder. But the fact that the respondent had not manufactured the ladder has no bearing on its liability if in fact it gave an express warranty. So it is with the respondent's proffered evidence that it purchased from the manufacturer with a warranty. "The fact that the seller purchased the article with a warranty is immaterial in determining whether he himself has given a warranty on the resale and certainly cannot itself import a similar warranty." 46 Am. Jur., Sec. 495.

Also, as the respondent contends, the express warranty must have covered the latent defect which caused the ladder to break. But it does not follow that the advertisement or the salesman or both of them must have represented as a positive fact "that the ladder contained no hidden cross-grains." It was possible to have done so and oftentimes warranties as specific are exacted or given, particularly in sales for a particular purpose. For example, an affirmation that a cow, sold for breeding purposes, "had been bred . . . and was then with calf" (Blair v. Hall, supra) or a statement that "none of the ewes were with lamb" (Kenney v. James, supra) are exact and specific express warranties as to particular matters. But for the affirmation to constitute a warranty against so specific a defect it is not necessary that the defect be named. If there was a specific affirmation or representation of fact that the ladder was *safe* or *sound* there was an express warranty of safety or soundness which includes and covers the latent defect of cross-grained wood. Thompson v.

Botts, supra; Steel v. Brown, 19 Mo. 312; Danforth & Co. v. Crookshanks, 68 Mo. App. 311; Faust v. Koers, 111 Mo. App. 560, 86 S. W. 278; 1 Williston, Sales, Sec. 203A. Here, assuming that the words "Safety First," in the headline, describing the factory purchased ladders were merely a trade name and ignoring them, the next sentence says, "In designing our ladders the prime consideration was SAFETY—and that's exactly what you'll find in these splendid ladders!" In describing the specific ladder the advertisement concluded, "a 'Rid-Jid' reinforced stepladder. Mighty strong and durable!" According to the appellant's evidence and the jury's finding the salesman said, "As far as strength, they were tested to two hundred pounds or better" and that the wood "was very good wood." Considering all the circumstances of the sale, and particularly the quoted words, the jury could reasonably find that the ladder was sold with a positive affirmation of safety and soundness, an express warranty which included the latent defect of cross-grained wood. The case nearest in point in every respect (irrespective of the Uniform Sales Act) is Silverstein v. R. H. Macy & Co., 40 N. Y. S. (2d) 916. There the plaintiff purchased a "chinning bar" which was to be fastened in the doorway of the user's home. Directions on the bar and in advertising matter, which the salesman and purchaser discussed, advised "that a few turns of the outer tube with the hands would securely fasten the bar against the door-frame and supply sufficient holding power to safely sustain 250 pounds without any danger of injuring the woodwork." Furthermore, the salesman said that "the bar was a safe article to use for the purpose for which it was sold." After five months' use the plaintiff, who weighed 170 pounds, was injured when the bar fell because "the device was faulty in construction in that it provided no mechanism to check loosening of pressure when the outside bar was caused to turn by a person swinging on it." The court held that "the plaintiff's proof established, prima facie, defendant's warranties and the breach thereof."

So it is with whether the appellant relied upon the affirmation and the respondent's intention with respect to the sale of the ladder. As the respondent points out, Mr. Turner did not specifically testify that he relied upon the words contained in the advertisement, though he did say that he relied upon the clerk's judgment as to the quality of the wood in the ladder. And, reliance by the purchaser upon the affirmation is one of the requisites of a cause of action for breach of warranty and one of the plaintiff's burdens is the proof of that element. 55 C. J., Sec. 692(d). However it is not necessary that the proof reveal by specific language reliance upon the representation. The fact of reliance by the buyer, as any other fact, may be made to appear and found from the circumstances; as here that "the seller's statements were of a kind which naturally would induce the buyer to purchase the goods and that he did purchase the goods"

and confidently use them in the ordinary manner upon the assumption of safety and soundness. 1 Williston, Sales, Sec. 206; Young v. Van Natta, 113 Mo. App., l. c. 558-559, 88 S. W., l. c. 124; Childs v. Emerson, 117 Mo. App., l. c. 677, 93 S. W., l. c. 287.

██ In defining and discussing warranty we have often used the word "intention" rather indiscriminately and without differentiation as to the nature and source of the warranty under consideration. We have used the word indiscriminately and even with various meanings in considering express warranties contained in written contracts and in cases in which oral representations were relied upon as constituting express warranties. For a few of the instances contrast Wertheimer-Swarts Shoe Co. v. McDonald, supra; Childs v. Emerson, supra; International Shoe Co. v. Lipschitz (Mo. App.), 72 S. W. (2d) 122, 125 and Steel v. Brown, supra; Haines v. Neece, 116 Mo. App. 499, 92 S. W. 919; Young v. Van Natta, supra and Blair v. Hall, supra. In the early cases dealing with representations as warranties the word "intention" is not used. Murphy v. Gay, supra; Kenney v. James, supra. And, it is likely, when a positive representation or affirmation of fact is relied upon, as contrasted with a strictly contractual obligation, that the intention of the seller is immaterial, even in the absence of the provisions of the Uniform Sales Act. 46 Am. Jur., p. 504; 1 U. L. A., Sec. 12. "If the representation is clear and positive, not a mere expression of opinion, and the buyer understands it as a warranty, and relying on it, purchases, the seller cannot escape liability by claiming that he did not intend what his language declared." 46 Am. Jur., Sec. 322, p. 503. If by "intention" is meant an "apparent intent to assert a fact," rather than the seller's actual intent or his intent to promise or to contract, "undoubtedly a real requirement of the law of warranty is stated by the word." 1 Williston, Sales, Sec. 201, pp. 380-381. In this case, the appellant's version of the sale was found by the jury, (the respondent's salesman did not testify) and according to the finding the ladder was made of "very good wood" and its strength "tested to two hundred pounds or better." The respondent's statement in its advertisement that "In designing our ladders the prime consideration was SAFETY— and that's exactly what you'll find in these splendid ('mighty strong and durable') ladders" is undenied and unambiguous. Consequently, whatever "intent" may mean in the law of warranty, the statements constituting the warranty in this case, being found or undisputed, there can be no doubt of the presence of the element. Burns v. Limerick, 178 Mo. App., l. c. 151, 165 S. W., l. c. 1169; Connelly v. Parrish (Mo. App.), 176 S. W. 546, 547; Faust v. Koers, supra.

██ In view of those principles, the jury could and did find from the evidence that there was a positive representation or affirmation of fact with respect to a latent defect, an express warranty that the ladder was safe and sound, reliance upon the warranty by the pur-

chaser, breach or failure of the warranty and all the prima facie requisites of a cause of action. Consequently, the trial court erred in sustaining the respondent's motion for a new trial on the specified grounds that demurrers to the evidence should have been sustained. [609] Bowen v. Zaccanti, 203 Mo. App. 208, 208 S. W. 277; Danforth & Co. v. Crookshanks, 68 Mo. App. 311; Hunter .v. Waterloo Gasoline Engine Co. (Mo.), 260 S. W. 970; 55 C. J., Secs. 844, 847, 849.

 In further justification of the trial court's action in granting a new trial the respondent contends that evidence was improperly excluded and that the jury was erroneously instructed. In passing on the substantial merits of the cause we have disposed of the contention that, in this case, the manufacturer's manual or catalogue was admissible for the purpose of showing that the salesman merely repeated the representations of the manufacturer and the respondent, therefore, had no intention of personally and separately warranting the safety of the ladder. As indicated, the respondent could have adopted and given the maker's warranty or have declined to make any representations whatever, but it did not choose to do so. Instead, it gave its own express warranty and, having done so, the fact that it purchased with a warranty or that someone else warranted the ladder became immaterial in this case. 46 Am. Jur., Secs. 313, 314; Annotation 28 A. L. R. 991.

 As to the instruction submitting the merits of the appellant's cause it is urged (1) that it "assumes as a matter of law that the representations constituted express warranties, regardless of the nature of the statements, the surrounding circumstances," or the intention of the vendor and (2) that "the issue of intention to warrant" is wholly ignored in the instruction.

The instruction hypothesizes a finding of a purchase of the ladder to be used in cleaning wallpaper and "that on said occasion defendant represented and warranted to plaintiff that the ladder mentioned in the evidence . . . was fabricated from a good and sound quality of lumber and of sufficient strength to sustain the weight of plaintiff's person in the course of normal and reasonable use thereof; and if you further find that plaintiff relied upon such representations, if any, and that relying thereon he purchased said ladder," that it broke while in normal use and "that said ladder was not of sufficient strength . . . and that it was not fabricated from a good and sound quality of lumber" and that plaintiff's injuries "directly resulted from said conditions," he was to have a verdict.

The instruction is not artfully drawn and it is not recommended as a model. Compare, in addition to the other cases cited, Offutt v. Battagala (Mo. App.), 44 S. W. (2d) 202. But it is not pointed out wherein or how it assumes the fact of warranty. That part of the representation contained in the advertisement was in writing and, having been found as a part of it, could have been assumed in so far as it

constituted the warranty relied upon. Thompson v. Botts, 8 Mo., l. c. 712; Steel v. Brown, supra; Murphy v. Gay, supra; Davis v. Cramer, 188 Mo. App., l. c. 725, 176 S. W., l. c. 470. The instruction does not ignore the essential facts upon which the appellant's right of recovery depend. Clark v. The People's Collateral Loan Co., 46 Mo. App. 248, 253. The fact is not assumed upon evidence which did not constitute a part of the representation, the sale and the warranty as was the case in Ransberger v. Ing, 55 Mo. App., l. c. 625. The mere use of the word "warranted" with and as if it were synonymous with the word "represented" does not of itself condemn the instruction though it would have been better to have used some other word. Perry v. Van Matre, 176 Mo. App. 100, 161 S. W. 643; Hudgings v. Burge, 194 S. W. 886, 887. In requiring the jury to find that the respondent "represented . . . the ladder . . . was fabricated from a good and sound quality of lumber and of sufficient strength to sustain" his weight, reliance and a breach of the representation consisting in the ladder's not being "fabricated from a good and sound quality of lumber" the appellant has combined the substance and essential meaning of the oral and written words relied upon as constituting the express warranty of safety and soundness, even though he does not use the exact language of his evidence (Callaway & Perkins v. Collier (Mo. App.), 246 S. W. 966, 968). In its essentials the instruction is comparable to those found in the following cases: Sinnamon v. Moore, 161 Mo. App. 168, 174, 142 S. W. 494, 496; Thompson v. Botts, 8 Mo., l. c. 712; Young v. Van Natta, 113 Mo. App., l. c. 559-560, 88 S. W., l. c. 124, 125; Perry v. Van Matre, 176 Mo. App., l. c. 105-108, 161 S. W., l. c. 645.

What we have said in discussing the merits of the case may be sufficient to dispose of the respondent's contention that the instruction is erroneous in omitting any reference to "intention." But, if it is not, the statements relied upon, when found to have been made, were positive statements of fact and "In such case it is not the secret intent the seller may have had in mind that governs, but it is the legal intent, or the intention which the law affixes to what is said and done that determines the question of warranty or no warranty." Burns v. Limerick, 178 Mo. App., l. c. 151, 165 S. W., l. c. 1169. The respondent does not deny that it made the statements, either oral or written, attributed to it. Compare: Matlock v. Meyers, 64 Mo. 531; Ransberger v. Ing, supra. There was no confusion, in the instruction, of two separate and distinct causes of action as was the case in Alvin Fruit & Truck Assn. v. Hartman, 146 Mo. App. 155, 167, 123 S. W. 954, 960. The respondent did not offer an instruction on intention. Galbreath v. Carnes, 91 Mo. App. 512. In addition, as we have indicated, the instruction is similar to many which have been given and it is not pointed out how or in what manner the omission was prejudicial, if erroneous and required. Perry v. Van Matre,

176 Mo. App., l. c. 107, 161 S. W., l. c. 645, 646; Hudgings v. Burge (Mo. App.), 194 S. W. 886; Young v. Van Natta, supra.

 It is also contended that the verdict of $15,000.00 is excessive and that the trial court was justified in granting a new trial for that reason.

The appellant was fifty-seven years of age when he was injured. He had been employed as a plant guard for about three years. His salary was $50.00 a week. Because of his injuries he was away from his work from April 27, 1943 until October 18, 1943. His loss in wages was $1,250.00. His medical expense totalled $600.00.

His injury was "a very badly comminuted fracture through the left tibia that extended into the knee joint and both sides of the knee were depressed pretty much." As the respondent concedes "It was unquestionably serious and required an open surgical operation" and the injury and treatment were painful. He was in the hospital five weeks, in a cast, then on crutches and at the time of the trial used a cane. From the injury "he had a fifty per cent permanent disability as regards the knee, at least; maybe more," and there was likelihood of future trouble. There was a shortening of one inch in his left leg; the left knee is about one and one-fourth inches larger than the right and the left ankle is two inches larger than the right. There is some lateral instability in the knee and permanent partial loss of flexion.

Comparing ages, earnings, medical expense, the nature and extent of injuries and losses and the awards approved in several similar cases recently decided the verdict in this case is excessive by $5,000.00. Willis v. Atchison, T. & S. F. Ry. Co., 352 Mo. 490, 178 S. W. (2d) 341; Heitz v. Voss Truck Lines (Mo.), 175 S. W. (2d) 583; Christopher v. Chicago, B. & Q. R. Co. (Mo.), 55 S. W. (2d) 449; Osby v. Tarlton, 336 Mo. 1240, 85 S. W. (2d) 27. However, there was no opportunity for a remittitur; the verdict is not so excessive as to indicate passion or prejudice on the part of the jury, and the trial court would not have been justified in granting a new trial merely because of the size of the verdict. Cazzell v. Schofield, 319 Mo. 1169, 1195-1196, 8 S. W. (2d) 580, 591-592; King v. Kansas City Life Insurance Co., 350 Mo. 75, 88, 164 S. W. (2d) 458, 465.

Therefore, if the appellant enter a remittitur in the sum of $5,000.00, within ten days, the cause is reversed and remanded with directions to reinstate the verdict and to enter a judgment in the sum of $10.000.00 as of the date of the original verdict, otherwise the judgment granting the respondent a new trial will be affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.