476 F.Supp. 633 (1979)
CHASE RESORTS, INC., and Four Seasons Lakesites, Inc., Plaintiffs,
v.
JOHNS-MANVILLE CORPORATION, a New York Corporation and Johns-Manville Sales Corporation, a Delaware Corporation, Defendants.
No. 77-1115C(1).
United States District Court, E. D. Missouri, E. D.
June 29, 1979.
*634 Dempster K. Holland, Thomas, Busse, Goodwin, Cullen, Clooney & Gibbons, St. Louis, Mo., for plaintiffs.
Eugene K. Buckley, Evans & Dixon, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This case arose out of the sale of an automatic watering system (hereafter "Binar System") for an 18 hole golf course owned by plaintiff Four Seasons Lakesites, Inc. and operated by plaintiff Chase Resorts, Inc. Defendant Johns-Manville Sales Corporation is the successor corporation of the company which originally sold plaintiffs the Binar System. Defendant Johns-Manville Corporation is the parent corporation of Johns-Manville Sales Corporation.
Plaintiffs' cause of action is for breach of express and implied warranties allegedly made in connection with the sale of the Binar System and for fraud.
The operation of the Binar System can briefly be described as follows. An indoor central programming unit sends DC electrical impulses along underground wires to decoders located at the various watering locations. The decoder decodes the pulse *635 signal from the central programming unit and contains a relay, which, according to the signal received, can either activate the solenoid within the decoder and which in turn activates the valve allowing water to escape, and/or the relay can pass the electrical impulse further down the line if the impulse was not coded for operation of the subject decoder.
The case was tried to the Court on September 18 through 21, 1978. After consideration of the testimony adduced at trial, the exhibits introduced in evidence, the briefs of the parties and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and conversely any conclusion of law applicable as a finding of fact is adopted as such.

Findings of Fact
1. Plaintiffs are both Missouri corporations with principal offices in the State of Missouri.
2. Johns-Manville Corporation is a New York corporation with its principal office in the State of Colorado.
3. Johns-Manville Sales Corporation is a Delaware corporation with its principal office in the State of Colorado.
4. In the early 1970's plaintiffs planned a golf course in Camden County, Missouri, and had the golf course designed by Robert Trent Jones, Inc., who was selected because of his national reputation. The designer specified an automatic irrigation system for the golf course and solicited bids from contractors for installation and supply of the system.
5. After soliciting and receiving bids from contractors the plaintiffs' President, Harold Koplar, decided to serve as his own general contractor. Plaintiffs purchased the materials for the automatic irrigation system directly from a Kansas supplier and hired a local water system installer to install the system.
6. The plaintiffs purchased some materials for the automatic irrigation system from Kuhn-Neuschafer, Inc. of Salina, Kansas, which in 1974 changed its name to the Landsco Corporation. These materials were for an automatic golf course watering system known as the Buchnar Binar Sprinkler System ("Binar System") which was manufactured during the period from August, 1970 to December 31, 1973 by Johns-Manville Irrigation Corporation.
7. Defendant Johns-Manville Corporation had nothing to do with the manufacture or sale or supply of this sprinkler system.
8. Plaintiffs did not purchase wire for the system from Kuhn-Neuschafer, Inc., but, obtained it directly from another source. The wire which plaintiffs obtained was two wire cable, 14/2 U.F. The 14/2 wire used by plaintiffs was not the type of wire called for in defendants' specifications, U.F. 14 gauge if the distance of the run with within 10,000 feet. 14/2 U.F. wire has insulation around both wires and a 1/32 inch PVC jacket. 14 U.F. wire is an insulated single conductor wire with a PVC jacket of a minimum thickness of 3/64ths of an inch. Because many of the decoders are buried underground, the wire used has a direct relationship upon the ability of the splice to withhold and resist the formation of moisture within the decoder assembly itself. 14/2 U.F. is not rated for underground burial where the outer jacket has to be taken off for a distance as it must be in making a connection from 14/2 U.F. wire to the decoding units.
9. Although Johns-Manville Sales Corporation supplied some installation instructions it did not supervise or control the installation of the system which is the subject of this lawsuit as such supervision was carried out by the contractor hired and selected by the plaintiffs.
10. Prior to installation defendant Johns-Manville Sales Corporation told plaintiffs that the wire was improper and that defendant could not approve it. After consulting with an employee of the architect selected by plaintiffs, plaintiffs decided to use the two wire cable.
*636 11. Defendants' catalog contained an express warranty that equipment manufactured by Johns-Manville Sales Corporation was free from defects and materials and workmanship and limiting the liability of Johns-Manville Sales Corporation for failure to meet that warranty or any other warranty, express or implied, to replacement or repair of defective equipment. That warranty expressly stated that Johns-Manville Sales Corporation did not offer any warranty, express or implied, as to the length of service life of its equipment and specified that Johns-Manville Sales Corporation would not be liable for incidental or consequential damages. Plaintiffs had actual knowledge of this limitation of warranty in February of 1973, prior to the time the equipment manufactured by Johns-Manville Sales Corporation was shipped to plaintiffs.
12. Tender of delivery of the materials supplied by Johns-Manville Sales Corporation's predecessor was made on various occasions from March, 1973 through September, 1973.
13. The golf course went into operation in 1974. The plaintiffs thereafter experienced some problems with the system, particularly as a result of lightning, and Johns-Manville Sales Corporation supplied some replacement parts, without charge, in compliance with its limited warranty, in an effort to correct the problem.
14. Plaintiffs also complained of moisture in the decoders. This was due to the installation of the system rather than the manufacture or design of the decoders. The installation was faulty due to the use of two wire cable, which was not in compliance with defendants' specifications. The use of this two wire cable created a problem with splicing, and permitted moisture to get into the decoders. In addition, many of the splices made by plaintiffs' employees or plaintiffs' installer were made with a wire nut and were not waterproofed, thus permitting water to get into the system resulting in erratic operation.
15. Some valve diaphragms in the system also failed but this was due to the fact that the system was installed with excessive water pressure and was very likely contributed to by the existence of foreign objects in the system caused by breakage.
16. Other problems with the system were due to the fact that a control wire had been cut by unknown persons thus preventing power from reaching an end of the control zone; by the failure of plaintiffs to replace capacitors that were not working properly with others supplied by Johns-Manville Sales Corporation; and by the fact that plaintiffs' maintenance crew was using an improper pulse voltage to control the decoders.
17. The materials supplied by Johns-Manville Sales Corporation and his predecessors were merchantable and fit for the ordinary purposes for which such goods are used.
18. The materials supplied by defendant Johns-Manville Sales Corporation and its predecessors were not defective.
19. The problems experienced by the plaintiffs with the Binar were caused by the acts, conduct or omission of the plaintiffs or the installation contractor as outlined above.
20. Johns-Manville Sales Corporation did not expressly warrant that the system would not require maintenance and repairs and did not expressly warrant that lightning and water could not interfere with the operation of the system. The representation that the Binar was "water and lightning protected" did not warrant that the Binar was waterproof and lightning proof but it did warrant that defendant had taken steps to reduce the possibility that lightning and water would not interfere with the operation of the system, and the statement that the Binar would provide "years of trouble free performance" did not expressly warrant that no repairs or maintenance of the system would be required. The Binar System contains a lightning protector for the input power to the central programmers, an inductor or coil for additional lightning protection with a solid state device to back the inductor up. The lightning protection contained within this system *637 originally sold plaintiffs utilized a spark gap in conjunction with the inductor and solid state system. Some time after installation of plaintiffs' system the lightning protection systems were changed to facilitate hookup and maintenance procedures by making the lightning protection devices a separate component from the central programming units. However, it is clear that the plaintiffs had the same protection devices in their system except that they were located inside the central programmers. The water protection within the system was largely frustrated by plaintiffs' use of two wire cable in connecting the decoders and by improper splicing procedures.
21. The statement on the part of Johns-Manville Sales Corporation that the system was "water and lightning protected" and would provide "years of trouble free performance" that were allegedly made to induce the plaintiffs to purchase the system were made prior to October 19, 1972 and thus were made over five years prior to the filing of plaintiffs' action herein.
22. The representations that the system was "water and lightning protected" and would provide "years of trouble free performance" were not false.
23. Plaintiffs did not rely upon the statements that the system was "water and lightning protected" and would provide "years of trouble free performance" in deciding to buy the system. Plaintiffs bought the system because it was prescribed by the architect they selected.
24. Defendant Johns-Manville Sales Corporation fully complied with the limited warranty contained in its catalog.
25. The language contained in the limited warranty in the catalog of defendant Johns-Manville Sales Corporation was in language which in common understanding called the buyer's attention to the exclusion of warranties and made plain that there was no implied warranty.
26. This action was filed more than four years after plaintiffs' claim for breach of express and implied warranties accrued.

Conclusions of Law
This Court has jurisdiction over the parties and has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 by reason of diversity of citizenship and the requisite amount in controversy. In supplying materials for the Binar System at plaintiffs' golf course, defendant Johns-Manville Sales Corporation and its predecessors did not breach an implied warranty of fitness and did not breach an implied warranty of merchantability. The materials supplied by Johns-Manville Sales Corporation and its predecessor were merchantable as that term is used in § 400.2-314 RSMo 1969. Plaintiffs' principal complaint was that its sprinkler system was rendered inoperable by lightning. However, lightning problems alone do not indicate that the system was unfit or unmerchantable. There is no such thing as a lightning proof sprinkler system and the Court finds on the evidence presented plaintiffs have failed to prove that defendants breached any implied warranty of fitness or merchantability. Plaintiffs' complaint of moisture in the decoders was due to the installation of the system rather than the manufacture or design of the decoders. In this regard, the Court credits the testimony of Wayne Davis regarding the tests conducted at Viking Laboratories in Sunny Vale, California. Similarly, the credible evidence adduced herein shows that the materials supplied by Johns-Manville Sales Corporation and its predecessors were merchantable and fit for the ordinary purposes for which such goods are used. With respect to plaintiffs' claim brought pursuant to § 400.2-315, RSMo 1969 the Court finds that the materials supplied by Johns-Manville Sales Corporation and its predecessors were fit for the construction of an automatic sprinkler system. With respect to both of plaintiffs' implied warranty claims, merchantability and fitness for a particular purpose, it is clear to this Court that the difficulties experienced by plaintiffs in the operation of the Binar where the result of the acts and omissions of plaintiffs and the installation contractor selected by plaintiffs and were not the result of any breach of implied warranties.
*638 Plaintiffs' claim of breach of an express warranty is similarly infirm. Johns-Manville Sales Corporation and its predecessors did not expressly warrant that water and lightning could not interfere with the operation of the system. The warranty stated that the system had been protected in that regard and the Court finds that the system was so protected. Further, Johns-Manville Sales Corporation and its predecessors did not expressly warrant that repair and maintenance of the irrigation system would not be required. The statement that the Binar "would provide years of trouble free service" did not amount to an express warranty:
The seller's privilege to puff his wares, enhance their quality, and recommend their value, even to the point of exaggeration, is unquestionable, so long as his salesmanship remains in the field of "dealer's talk", commendation or mere expressions of opinion. 46 Am.Jur. § 326, p. 506. Particularly do the obligations of warranty not attach when the seller's talk is confined to expressions of opinion and not affirmations of fact.
Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603, 606 (1945). Recently, in Interco, Inc. v. Randustrial Corp., 533 S.W.2d 257, (Mo.App.1976) the St. Louis Court of Appeals reaffirmed the reasoning in the Central Hardware Company case, supra, as it pertains to § 400.2-313(2). In comment 8 following the aforesaid section the draftsman of the UCC explained the difference between the "mere opinion" exclusion of § 400.2-313(2) by stating, ". . . common experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain . . ." One court described the distinction between statements of fact and statements of opinion as follows:
[R]epresentations of fact capable of determination are warranties, but mere expressions of opinion, belief, judgment or estimate by a dealer in sales talk are not. Where opinions are coupled with representations of fact which relate to such matters and are susceptible of exact knowledge, they constitute more than a mere opinion and are properly regarded as representations of fact, and, to the extent that they are representations of fact, they constitute warranties.
Young & Cooper, Inc. v. Vestring, 214 Kan. 311, 521 P.2d 281, 290 (1974). How many years of trouble free performance and what constitutes trouble free performance are at least two questions relating to these opinions which are not susceptible of exact knowledge and are not properly regarded as representations of fact.
Furthermore, the statements in the catalog were not effective as express warranties, and there were no implied warranties because the very same catalog contained the following warranty.
Johns-Manville Irrigation Corporation warrants equipment of our manufacture to be free from defects in materials and workmanship using J-M specifications as a standard. The limit of J-M's liability for failure of any of our products to meet the foregoing warranty or for breach of any other warranty, express or implied, shall be to supply F.O.B. plant of origin an equivalent amount of J-M products for any products found by J-M to be defective or to repair parts found to be defective by J-M within one year of shipment. DUE TO THE WIDELY VARYING CONDITIONS UNDER WHICH OUR PRODUCTS ARE USED OR INSTALLED, WE OFFER NO WARRANTY, EXPRESS OR IMPLIED, AS TO THEIR LENGTH OF SERVICE LIFE. In no event shall J-M be liable for incidental or consequential damages. No person other than our president is authorized to bind J-M for any further warranty obligation beyond that stated in this paragraph.
Pursuant to § 400.2-316(3), RSMo 1969, this paragraph limited defendants' warranty to repair or replacement of defective parts.
In any event plaintiffs failed to commence their warranty actions within four years after their purported causes of action accrued and, therefore, their warranty *639 claims are barred by the statute of limitations contained in § 400.2-725, RSMo 1969. Any warranties arose when tender of delivery was made and this was between March and September of 1973. This suit was filed more than four years thereafter on October 19, 1977. The alleged express warranties here were not warranties for future use, therefore, plaintiffs' causes of action accrued when tender of delivery was made regardless of whether plaintiffs had knowledge of the alleged breach of express warranty. See Binkley Co. v. Teledyne Mid-America Corp., 333 F.Supp. 1183, 1185-1187 (E.D.Mo.1971), aff'd 460 F.2d 276 (8th Cir. 1972).
Count II of plaintiffs' second amended complaint sets forth a common law action for fraud. As indicated above the statements that the system was "water and lightning protected" were true and did not amount to a representation that water and lightning could not interfere with the operation of the system. The statement that the Binar would provide "years of trouble free performance" is so vague and abstract that this Court would necessarily have to guess as to the precise nature of the material fact allegedly misrepresented. Clearly that fact was not that maintenance or repairs would never be required. In any event, as outlined in the Court's findings of fact, supra, plaintiffs did not rely on the statements that the system was "water and lightning protected" and would provide "years of trouble free performance" in deciding to buy the system. The establishment of each of these essential elements is necessary to recovery. See Powers v. Shore, 248 S.W.2d 1, 5 (Mo.1952). Judgment will be entered for defendants.