Lendell D. M. WALKER,
Plaintiff-Appellant,

v.

WOOLBRIGHT MOTORS, INC.,
Defendant-Respondent.

No. 11920.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 18, 1981.

Charles M. Wesley, Waynesville, for plaintiff-appellant.

J. Max Price, Salem, for defendant-respondent.

PREWITT, Presiding Judge.

Plaintiff brought suit on an express warranty to recover the cost of repairs to a car he purchased from defendant. At the close of all the evidence the trial judge directed a verdict for defendant.

The only question presented is whether plaintiff made a submissible jury case. Defendant contends that plaintiff did not because there was no evidence that the need to repair occurred during the warranty period and because plaintiff did not plead nor prove that plaintiff relied upon the warranty.

In determining if plaintiff made a case for the jury's consideration we view the evidence and reasonable inferences most favorable to plaintiff. *Wilson v. Missouri-Kansas-Texas Railroad Company*, 595 S.W.2d 41, 44 (Mo.App.1980). The evidence favorable to plaintiff showed the following: On January 15, 1975, plaintiff, a soldier at Fort Leonard Wood, Missouri, purchased a 1971 Pontiac Trans Am automobile from defendant, then known as Gryder Motors, Inc. Defendant is a car dealer located in Rolla, Missouri. A written purchase agreement on defendant's form contained a "Warranty" which stated in part: "For a period of thirty days or 2000 miles from purchase, Gryder Motors will repair or replace any defective part of component below at no cost to the purchaser for any

parts or any labor." The next day while operating the vehicle, plaintiff heard "a grinding metallic knock like a rod knock or something". He took the vehicle back to defendant that day and defendant's employee said they would repair it, apparently under the warranty. Defendant's employee knew that plaintiff was anxious for the return of the vehicle so he could drive it home to Detroit on leave. Defendant claimed difficulty in getting parts, and kept the car thirteen days. On January 29, 1975, plaintiff was assured that the car was "all fit and ready to go" and left defendant's place of business with it. He was not charged for the work on it. Plaintiff drove the vehicle to Detroit at a proper rate of speed, "about 50, 55 miles per hour". A block and one-half before he arrived at his parents' house, he heard the "identical noise" that he had heard the day after he purchased it. He stopped the car and had it towed to a nearby Pontiac dealer. He then called defendant and asked defendant's service manager if defendant would pay for it being repaired there. That request was denied and plaintiff told "If you get the car back down here, Mr. Walker, I'll check it out for you." Plaintiff contends that the car was not then drivable. He had the car repaired in Michigan and paid the bill. Defendant refused to reimburse him for the cost of repairs. At the time it was repaired the vehicle had 1,199 miles more than it had when plaintiff purchased it. After the repair the vehicle operated properly.

The evidence does not directly show the date when the problem necessitating the repairs in Michigan occurred. When plaintiff took the car on January 29, 1975, he was anxious to get to Detroit and it occurred before he reached his parents' house. Those circumstances would seem to indicate that it occurred within 30 days from January 15, 1975. However, there was no direct evidence when it happened and plaintiff's attorney in his opening statement said that it occurred after "more than 30 days elapsed." The petition alleged that the repairs were "required" on February 17, 1975. That was the date the evidence showed

plaintiff paid for the repairs. The attorney also stated in his opening statement that the vehicle was "guaranteed for 30 days, for up to 2000 miles, whichever comes first." There is no language in the purchase agreement stating or directly indicating that the warranty terminated upon the happening of either 30 days or 2000 miles since purchase, whichever occurred first. Defendant contends and for the purpose of this opinion we will assume that plaintiff's counsel's statements are binding on plaintiff. See *McCarthy v. Wulff*, 452 S.W.2d 164, 167 (Mo.1970); *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 799 (Mo.App.1975).

■ We first consider whether plaintiff's case failed because the difficulty with the vehicle in Detroit occurred more than thirty days from the date of purchase. The warranty applied for "thirty days or 2000 miles from purchase". Under defendant's contention thirteen days of the warranty expired while it had the vehicle and plaintiff could not use it. Warranties should be meaningful and laws governing them should be administered so as to be fair to all parties concerned. *Russo v. Hilltop Lincoln-Mercury, Inc.*, 479 S.W.2d 211, 213 (Mo. App.1972). *Jacobson v. Broadway Motors, Inc.*, 430 S.W.2d 602, 607 (Mo.App.1968). Courts are prone to construe in favor of the buyer provisions limiting the effective time of a warranty. See Annot. 24 A.L.R.2d 717, 720 (1952). We construe a contract so as to make it fair and reasonable and not to give one party an unfair advantage. *Beck v. Hoel-Steffen Construction Company*, 605 S.W.2d 810, 813 (Mo.App.1980). The rule that an ambiguous contract should be construed strongly against the drafting party is one of several subsidiary construction aids which are utilized when other means fail. Id.

■ A warranty would not be meaningful or fair if the seller either through inadvertence or design was able to keep the item or prevent its use for a substantial period while the time for the warranty was running. In order to make the time of a warranty meaningful, the period when the item is not functional due to a condition warranted against should not be included in computing that time. There is nothing contrary in the agreement and this interpretation would make the warranty fair in fact and give the plaintiff thirty days of use with warranty coverage. This is obviously what he contemplated when purchasing the vehicle. The difficulty in Detroit occurred at least by February 17, 1975, well within the thirty days that plaintiff was entitled to have the use of the vehicle before the warranty expired.

■ In its contention that it was necessary for plaintiff to plead and prove that he relied on the warranty in purchasing the car, defendant relies on *Venie v. South Central Enterprises, Inc.*, 401 S.W.2d 495 (Mo. App.1966), and *Turner v. Central Hardware Co.*, 353 Mo. 1182, 186 S.W.2d 603, 158 A.L.R. 1402 (1945). Those cases concerned events occurring before Missouri adopted the Uniform Commercial Code. Since the adoption of the Uniform Commercial Code no particular reliance on an express warranty is required. *Interco, Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 261–262, 94 A.L.R.3d 720 (Mo.App.1976). Even before it was the rule that where a contract is reduced to writing and the warranty is one of its terms, it is presumed that the buyer relied on the warranty when he purchased the goods. *Saunders v. Cowl*, 201 Minn. 574, 277 N.W. 12, 15 (1938). See also *Turner v. Central Hardware Co.*, supra, 186 S.W.2d at 608.

Plaintiff made a submissible case. Therefore, the judgment is reversed and the cause remanded for a new trial.

MAUS, C. J., and HOGAN and BILLINGS, JJ., concur.