**GREAT ATLANTIC & PACIFIC TEA CO.**
**v. ROBARDS.**

No. 5577.

Circuit Court of Appeals, Fourth Circuit.

May 12, 1947.

F. S. Spruill, of Rocky Mount, N. C., for appellant.

Lyn Bond, of Tarboro, N. C., and B. H. Thomas, of Rocky Mount, N. C. (Chauncey

H. Leggett, of Tarboro, N. C., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This action arises from allegations of injuries sustained by an employee because of an employer's negligence in failing to provide sufficient help. The Great Atlantic & Pacific Tea Company, the defendant and appellant (hereinafter called A. & P.), an Arizona corporation, hired Dorothy Robards, an infant, who sues by her next friend (hereinafter called plaintiff), to work in an A. & P. store located in Rocky Mount, North Carolina. Plaintiff claims that she was injured on April 10, 1945, while in this employ, and instituted suit for damages in the United States District Court for the Eastern District of North Carolina. The jury returned a verdict in favor of the plaintiff for $5,000 and judgment was entered accordingly. A. & P. has duly appealed.

The sole question presented by this appeal is whether there was sufficient evidence to take the case to the jury. A. & P. contends that the plaintiff offered no evidence proving the defendant's negligence; also that she failed to establish any injury resulting from her employment by A. & P. These issues were raised by a motion for a directed verdict which the lower court, quite properly we think, overruled.

This store in which plaintiff worked is one of the so-called "self-service" grocery stores. The organizational arrangement of the A. & P. personnel, excluding management and the meat department, contemplated, roughly, four types of duty. There were first the "freight clerks" or employees who moved the cases of food from the storage or stock room in the rear to the racks or shelves situated in the main store room. Next there were "dairy clerks" who attended a counter with tobacco, candy and certain special commodities. Then there were "produce clerks" who assisted customers by weighing and marking produce. And, finally, there were the "checkers" or cashiers located near the exits.

Although there were twelve employees in this store alone, A. & P. had affirmatively elected not to operate under the North Carolina Workmen's Compensation Act. N.C.General Statutes, 97-1 et seq. (five or more employees). Hence this action is governed by the rules of the common law except in so far as that has been abrogated by N.C.General Statutes 97-14 which deny to an employer, otherwise qualified but not electing to come under the Workmen's Compensation Act, the defenses of contributory negligence, fellow servant and assumption of risk.

We turn then, to the first aspect of the question here, that is, whether there was evidence to support a finding of negligence on the part of the A. & P. The plaintiff testified as follows. She first worked part time as dairy clerk and produce clerk. Later she was switched to duty as a freight clerk, although she continued concurrently in other duties from time to time. It appears that this work, once done exclusively by men, was assigned to women when manpower was scarce during the war. Normally the women worked in pairs. It was their duty to load the food cartons (weighing from thirty-five to fifty pounds) on wagons which they rolled from the stock room and then unloaded in the main store room. We quote from the record plaintiff's testimony in part:

"Q. Generally, what part of the day were you called upon to act as freight clerk? A. In the afternoon. Most of the time two girls were assigned to work together so it wouldn't be too heavy. I had a girl friend, Hazel Ray, who usually worked with me. She left to be married the first of March. She was married March 15th. From then until the 9th day of April I had very little help. I had the injury April 10. I had at least a week and a half of which I had no help. It was during this time my back was strained and injured.

\* \* \* \* \* \*

"Q. Going back to the period shortly before the time of the occurrence, did you ever make request of the management of the store for additional help in lifting these packages? A. Yes, sir, at least four or five times and some help was given \* \* \*

Anyway, I was not relieved of the lifting I had to do, neither was I relieved of the job I was doing at that particular time as freight clerk.

"Q. To whom were those requests made? A. To the manager, Mr. Wynn.

"Q. Was assistance furnished on account of your request? A. No."

On cross-examination, the plaintiff was not shaken, but, on the contrary, strengthened her case materially. She amplified her testimony that the other employees, who had standing instructions to help from time to time, while not flatly refusing her requests, would demur on the grounds that they were too busy at the time. She was equal to the most searching questions counsel could put as to each specific employee, his duty, and the manner in which assistance was withheld by that employee. These employees gave inconclusive and somewhat inconsistent testimony and these issues of fact, so raised, were properly sent to the jury. Again we recur to plaintiff's testimony in the record:

"Q. Who was responsible for it (duty as freight clerk)? A. I was. I spent most of my hours out there except when we had maybe two very busy hours in the day. The rest of the time I spent putting up the freight. I could very easily say two hours only I checked except on Saturday. It was on very rare occasions that these others helped at all."

Plaintiff's positive testimony that it was her responsibility to keep the shelves loaded; plus her positive testimony that others, despite instructions, did not help her; plus her positive testimony that she complained to the management without avail, all go to establish a case in her favor and from which certainly we cannot say that reasonable men could not find negligence on the part of A. & P. A motion for directed verdict, of course, requires that the evidence be viewed in the light most favorable to the plaintiff and every reasonable inference must be drawn to accord the plaintiff's contentions. Jackson v. Atlantic Coast Line R. Co., 181 N.C. 153, 106 S.E. 495; Bechtler v. Bracken, 218 N.C. 515, 11 S.E.2d 721.

Plaintiff admitted (and A. & P. would make much of the fact) that, although she had repeatedly asked for help previously, she did not make the request immediately prior to the moment her back was strained. Her exact statement was: "Not at that particular instant, no, I don't suppose I did." While this did not help her case, surely it did not destroy every reasonable inference of negligence that could have been drawn from the testimony quoted and from testimony found in other parts of the record. A. & P. contends, however, that this statement brings the case squarely within the rule of Jarvis v. Erwin Cotton Mills Co., 194 N.C. 687, 140 S.E. 602. An examination of that case, decided in 1927, will disclose one controlling distinction. There, with facts very similar, the employee in asking for help immediately before the injury occurred, was directed by his foreman "to get somebody else." That fact, standing alone, might not be a sufficient distinction. However, it must be viewed in the state of the law that was then controlling. The court's repeated and emphatic references to the order to get other help, the experience of the employee, and the fact that he got "such help as he thought sufficient" make it unmistakably clear that the decision turns ultimately on the defense of assumption of risk. In fact the court pointed out in the Jarvis case, 140 S.E. at page 603: " 'An employee, directed to carry plank, cannot hold the employer responsible for hernia caused by the work beyond his strength, although when directed to do the work he protested that it was too heavy.' Denial of recovery in this line of cases is usually based upon the theory that the employee assumed the risk, for the reason that the workman himself is the best judge of his own strength, or certainly as capable of judging his own strength as the employer. An examination of our decision upon the subject, however, will demonstrate that the rule of liability is much stricter in this jurisdiction, perhaps, than that recognized by the weight of authority in other states."

The common law was in full force at that time as North Carolina General Statute 97-14 was not enacted until 1929, two years after the Jarvis case. Such a

932

statute, although abolishing an employer's most cherished defenses, does not make him an insurer, nor does it relieve the employee of establishing a breach of duty. Newbern v. Great Atlantic & Pacific Tea Co., 4 Cir., 68 F.2d 523, 91 A.L.R. 781 (where we held that the simple tool defense was still available despite this North Carolina statute); see Schneider, Workmen's Compensation, §§ 91, 93. It is elementary, however, that this statute leaves the employer in a completely exposed position in a suit of this sort. We conclude that the Jarvis case is not controlling here.

 We come to the second contention of A. & P. that the plaintiff failed to prove that she was injured as a result of defendant's negligence. The evidence offered, while not overwhelming, was sufficient, we think, to raise a question for the jury. Plaintiff testified that in lifting a carton of soup, weighing about forty pounds, she felt a sharp pull in her back. She promptly reported this to the manager who relieved her of the duties as freight clerk and assigned to her the duties of a checker. She testified that on the night following this strain she was unable to sleep and suffered intensely. Plaintiff has not been able to do any strenuous work since the strain. She was corroborated in this by her parents who testified as to her suffering. Although she continued in the employ of A. & P. for a short time, she was permitted to sit on a crate while checking, a privilege not enjoyed by other checkers while on duty. She continued to have trouble with her back and consulted a number of doctors (one at the suggestion of the A. & P. manager).

 The doctors (all called by the defendant, A. & P.) testified that plaintiff was suffering from a slight pelvic tilt and a mild curvature of the spine. Some said the curvature was of long standing and perhaps congenital. Certain treatments were prescribed and the plaintiff has been compelled to wear a brace. It appears that most of the doctors examined plaintiff some time after the injury occurred. Some stated that there was no "recent" injury in their opinion, although the word "recent" was not given a very precise meaning, so

far as we can ascertain from the record. Plaintiff rather effectively neutralized some of the damaging testimony of the doctors by pointing out that they merely X-rayed her back without making an independent investigation of the existence of strained muscles (which would not show up on the plates). The question of the extent of the injuries and the damages resulting therefrom, notwithstanding the expert testimony, was a question for the jury. Bulluck v. Mutual Life Ins. Co., 200 N.C. 642, 158 S.E. 185; Fields v. Equitable Life Assurance Society, 195 N.C. 262, 141 S.E. 743.

The lower court, we believe, was right in submitting the case to the jury and the judgment for the plaintiff is affirmed.

Affirmed.