## AMERICAN CYANAMID CO. v. FIELDS.

### No. 6567.

United States Court of Appeals
Fourth Circuit.

Argued April 16, 1953.

Decided May 11, 1953.

W. T. O'Farrell, Charleston, W. Va. (G. J. Triplett and Jackson, Kelly, Morrison & Moxley, Charleston, W. Va., on the brief), for appellant.

Martin C. Bowles, Charleston, W. Va. (L. F. Poffenbarger, Charleston, W. Va., and William H. Hazlett, St. Albans, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and HUTCHESON, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Southern District of West Virginia, entered upon a jury verdict in favor of the plaintiff

in an action to recover damages for the loss of a flock of pullets. The loss was alleged to have been caused by the negligence of the defendant, American Cyanamid Company, in the preparation of a poultry medicine with which plaintiff treated his flock. The jury returned a verdict for plaintiff and fixed his damages at $6,000.00.

In March, 1951, the plaintiff, a poultry farmer of some twenty years experience, purchased 2,900 white leghorn pullets which he kept in six, separate compartments of one of his chicken houses. This house was a two-story structure having three compartments on each floor so arranged that the chickens of one compartment could not intermix with those of another. At this time the plaintiff also had on hand some 1,000 older chickens, which were housed in another structure some 300 feet away from that in which the pullets were kept.

For the purpose of worming his pullets, the plaintiff purchased five bottles of a poultry medicine, known as P. N. Powder Veterinary, on October 5, 1951. This preparation normally contains a combination of nicotine and phenothiazine, and is manufactured by the Lederle Division of the defendant company, one of the largest pharmaceutical and biological laboratories in the world. In accordance with the directions on the container, plaintiff mixed one bottle of the P. N. Powder with each of five 100-pound bags of mash feed. The mash feed was prepared for market by the Early and Daniel Company and sold to plaintiff by the Tuxedo Feed Company; neither of these two companies was in any way connected with the defendant.

On the afternoon of October 17, 1951, plaintiff distributed the five bags of feed so treated equally among the feeders in the six compartments of the chicken house. That same afternoon he also fed the same type of feed to his other flock of chickens but this feed had not been treated with P. N. Powder. Although the feed given to the older chickens did not come from the same bags as that which was treated and fed to the pullets, it was purchased from the same company and came from the same carload lot.

On the following morning the entire flock of pullets was sick—some of the pullets were already dead, others were dying. Plaintiff took three of them to the West Virginia State Laboratory at Charleston for examination. As these three were dead on arrival, an autopsy was performed by Dr. Hanley, the State Veterinarian. Although the kidneys and pancreas of each showed a chalky condition, there was no evidence of any infectious disease. On the autopsy report, Dr. Hanley indicated a possible diagnosis of Pullet's Disease or Bluecomb. He testified, however, at the trial that he suggested "the very remote possibility" of Bluecomb because of the absence of first hand symptoms and information.

During the day following the feeding, approximately 150 of plaintiff's pullets died, approximately 800 died during the next two days, and within thirty days of the feeding about 1,280 were lost. The remainder of the flock was thereafter substantially useless as egg producers. Throughout the 29 week period prior to October 17, the plaintiff had lost only 83 pullets of the original 2,900 he had purchased. No injurious effects were noted in the flock of older chickens which had been fed the untreated mash feed.

The plaintiff's evidence further tended to show that there was a difference in color between the P. N. Powder he purchased and that ordinarily sold, that overdoses of pure P. N. Powder would not cause death, that a chemical analysis of a sample of the powder he purchased revealed an absence of nicotine, that Pullet's Disease or Bluecomb is easily recognized and diagnosed in severe cases, and that certain symptoms of that disease were lacking in the present case.

The defendant introduced evidence to show that the materials used and the procedure followed in manufacturing its product were standard and accepted in the pharmaceutical manufacturing field. The separate ingredients used in compounding the powder were each analyzed before being introduced into the mixture, and each batch of powder was again analyzed when

the manufacturing process was completed. As of the date of trial, the defendant had manufactured and marketed enough P. N. Powder to treat 180,000,000 chickens, and no injuries or illness traceable to its product had been reported.

Defendant's experts testified that P. N. Powder was a recognized medicine for the treatment of worms in poultry, and that the nicotine used therein was not in its pure form but in chemical combination which would make it undetectable by chemical analysis. The testimony of defendant further tended to show that the difference in color between the two powders was caused by the innocuous process of ordinary oxidation; that poisoning of the pullets would have caused lesions in the internal organs and a hemorrhagic condition of the blood vessels, neither of which was present in the pullets examined; that Pullet's disease was primarily an affliction of young chickens; and that the chalky condition of the kidneys and pancreas as well as the continuing death of plaintiff's fowl over a substantial period was characteristic of Pullet's Disease or Bluecomb and not of poisoning.

On this appeal, defendant insists that the plaintiff has failed to make out a prima facie case of negligence against the defendant and that plaintiff's evidence is purely speculative and therefore incapable of supporting a verdict. For these reasons defendant contends that its motion for a directed verdict should have been granted. With this position we are unable to agree.

■■■ Unquestionably the burden was upon the plaintiff to show that the negligence of the defendant was the cause of his loss. To discharge this burden it was incumbent upon the plaintiff to introduce evidence showing such negligence and the necessary causal connection with the injury; or at least evidence from which these elements could reasonably be inferred. Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L. Ed. 520; Baltimore v. Louisville & N. R. Co., 4 Cir., 146 F.2d 358. It is also true that a jury finding must be based on probative facts, and that a verdict founded on speculation and conjecture cannot be allowed to stand. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L. Ed. 1458; Moore v. Chesapeake & O. Ry. Co., 4 Cir., 184 F.2d 176, affirmed 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547; Turk v. McKinney, 132 W.Va. 460, 52 S.E.2d 388.

It is equally well settled, however, that on defendant's motion for directed verdict, the plaintiff's evidence must be viewed in the light most favorable to him and that he is entitled to the benefit of all inferences reasonably arising from such evidence. Long v. Clinton Aviation Co., 10 Cir., 180 F.2d 665, 667; Great Atlantic & Pacific Tea Co. v. Robards, 4 Cir., 161 F.2d 929, 931; Baltimore v. Louisville & N. R. Co., supra.

■■■ Considered in this manner, the plaintiff's evidence showed that there was nothing deleterious in the mash feed which he used. No harm was suffered by those chickens which were given this feed alone; only when it was treated with defendant's powder did any injury result. In May, 1952, the plaintiff rinsed out one of the bottles in question, mixed these washings with some mash feed from a different bag than that used the preceding fall, and fed it to one of his chickens which succumbed the following day. The evidence also showed that there was no nicotine present in the powder he purchased, that phenothiazine is itself poisonous if taken in certain quantities, that such poisoning would produce a chalky condition in the kidneys and pancreas, and that if his loss had been caused by Pullet's Disease or Bluecomb, this fact would have been readily established by an experienced veterinarian.

On the whole, we are of the opinion that the plaintiff's evidence was sufficient to sustain the jury's verdict. True as it may be that the defendant's evidence equally well justifies a finding that the defendant was not negligent or that plaintiff's loss resulted from Bluecomb, the jury were not bound by defendant's evidence, nor forced to accept the testimony of its experts. Here, the conflict of evidence presented a question of fact, the resolution of which was properly left to the jury, and we are

not permitted to substitute another and different conclusion from that which the jury reached.

The judgment of the District Court is, accordingly, affirmed.

Affirmed.