Clementine TUCKER and Reliable Insurance Company, a Corporation, (Plaintiffs), Appellants,

v.

CENTRAL HARDWARE COMPANY, a Corporation, (Defendant), Respondent, Third-Party Plaintiff,

v.

SEASON D'AIRE SERVICE, INC., a Corporation, General Electric Company, a Corporation, Third-Party Defendants,

BEACH ELECTRIC COMPANY, a Corporation, Third-Party Defendant, Third-Party Plaintiff,

v.

GLASCO ELECTRIC COMPANY, a Corporation, Essex Wire Corporation, Third-Party Defendants.

No. 52862.

Supreme Court of Missouri, Division No. 1.

Feb. 8, 1971.

Jack B. Schiff, Gerald K. Rabushka, Clayton, for plaintiffs-appellants.

Louis W. Riethmann, St. Louis, for respondent.

WELBORN, Commissioner.

Action for damages resulting from fire, alleged to have been caused by defective air conditioner installation made by Central Hardware Company. Trial court directed verdict for defendant at close of plaintiffs' case. Plaintiffs appeal.

In June, 1962, plaintiff Clementine Tucker purchased a full house air conditioner from defendant Central Hardware Company. The agreed purchase price included installation of the machine. Central employed Season D'Aire Service to do the installation. The installation required the use of electric cable which was installed by Beach Electric Company, which in turn had purchased it from Glasco Electric Company.

The installation was at plaintiff Tucker's residence in St. Louis. Electric power entered the residence through the south wall of the basement. To provide power for the air conditioner, a cable was run from the principal fuse box to a circuit breaker placed near the fuse box. A Romex cable ran from the circuit breaker along the basement wall, eventually reaching that portion of the air conditioner which was

installed outside the house, on the west side.

The installation was completed June 22, 1962. In July, 1962, Season D'Aire on behalf of Central made some changes and adjustments in the air conditioning system. In August, Mrs. Tucker complained that the fan was not working. Inspection by Season D'Aire on behalf of Central showed it was all right. There were no subsequent activities by Central with respect to the installation.

Mrs. Tucker used the air conditioner during the warm weather after its installation. Sometime before February, 1963, she had turned off the cooling system and turned the control to heating.

On February 17, 1963, while Mrs. Tucker was at work and no one was in the house, a fire broke out which caused extensive damage to the house and its contents. The principal fire damage was in the back, or south part of the house.

Mrs. Tucker brought suit, alleging that the fire had been caused by the defective air conditioning equipment and wiring which defendant Central installed. The petition alleged that damage of $25,000 had been caused by the fire. The Reliable Insurance Company had paid Mrs. Tucker $12,942 on a fire insurance policy. The petition sought recovery on behalf of Reliable of that amount and on behalf of Mrs. Tucker for $12,058. Numerous third-party claims were filed, but we are not here concerned with them.

Upon the trial of the case, plaintiffs relied upon the testimony of Mrs. Tucker, largely on the issue of damage, the testimony of one expert witness as to the cause of the fire, and defendant's answers to interrogatories propounded by plaintiffs. At the close of plaintiffs' case, the trial court sustained Central's motion for a directed verdict on the grounds that no cause of action for its liability had been shown under the law and the evidence.

On this appeal the sole question presented is whether or not a submissible case of breach of warranty had been shown by plaintiffs. At the outset, we note some uncertainty as to the plaintiffs' theory concerning the warranty involved. The petition seems to have proceeded on the theory of implied warranty of merchantability. At the trial, plaintiffs produced newspaper advertising by Central of air conditioning equipment. The advertisement included the statement "* * * complete satisfaction is guaranteed." The only case cited in appellants' brief is the case of Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603. In that case, a newspaper advertisement and representations of the salesman at the time of the sale of a ladder were held sufficient to permit the jury to find an express warranty against the latent defect which subsequently caused the ladder to break.

Respondent does not question that plaintiffs did show a warranty of some nature. In view of the argument advanced by respondent, there is no necessity of determining whether plaintiffs' claim is bottomed properly upon an express warranty or whether the claim is based upon an implied warranty of merchantability.

The essential question on the appeal is whether or not plaintiffs' evidence demonstrated that the fire was caused by a defect in the air conditioning electric cable for which defendant was responsible. Although respondent disputes the sufficiency of appellants' evidence as to the source of the fire, we think that plaintiffs' evidence would have supported a finding that the fire resulted from arcing in the cable for which defendant was responsible and which transmitted the power from the circuit breaker to the air conditioning unit.

Plaintiffs' case stands or falls primarily on the testimony of plaintiffs' expert witness, Dr. Richard J. W. Koopman, Professor of Electrical Engineering at Washington University. The qualifications of

the witness are not questioned so that no question is presented on that score.

Doctor Koopman testified that he examined Mrs. Tucker's house on May 9, 1963. Examination at that time of the electrical wiring on the premises showed that in the Romex cable leading from the circuit breaker to the air conditioner, an arcing had occurred in two of the three wires enclosed in the Romex cable. The arcing had occurred approximately a foot beyond the point where the cable led from the circuit breaker box. The witness's opinion was that the arcing had produced heating which had caused the material covering the wires to vaporize and the heat ignited drapery material covering the south wall of the basement of the house. In response to an inquiry as to his opinion concerning the cause of the arcing, the witness stated:

"For an arc to start, first of all, we have to have a power source connected, and secondly, there has to be some weak spot in the insulation between the wires. This weak spot insulation between the wires could be caused by one or more causes. It could have been accidentally a piece of metal in the covering over each individual wire. It could have been mashed by such a thing as a hammer blow which would destroy the insulation or impair it, or excessive bending would produce something of the same nature as a hammer blow. Another thing it could sometimes— and it has caused an arc—if there is a weak spot insulation, some sort of over voltage which could come through, which is greater than the insulation level that the wire could stand, could come through. So it would be one of these."

The witness later stated that a nail or other fastener driven into the cable at that point could have caused the arcing. He could not tell whether there had been any sort of fastening of the cable to the wall at the point of arcing.

On cross-examination, the witness testified that lightning could have produced the arcing, although he considered such possibility unlikely. He testified also that external heat could have damaged the cable and produced the arcing. Again, he testified that he did not consider it likely that this is what occurred.

On cross-examination, the witness was asked whether or not, when he examined the cable, he found any evidence of the various causes which he considered likely to have been responsible for the arcing. His response was:

"If there was a defect in the cable this is necessary (sic) destroyed by the arc throw also. Any evidence of any of the various causes that you recited just now, these effects are destroyed in the arc."

The question presented is whether or not this testimony is sufficient to permit the jury to find that the fire was caused by a defect in the cable for which defendant was responsible. This involves the question of whether or not the cable was defective when installed and also whether or not anything had occurred subsequent to the installation which was responsible for the defect the witness said existed. In this connection, the only testimony as to what, if anything, occurred with respect to the installation between June 22, 1962 and the date of the fire is the following:

Plaintiff Tucker was asked: "Now, after this installation by Central Hardware of this air-conditioner did you personally or did you have anyone attempt to tamper with it, or adjust, or correct anything that you were complaining of yourself?" The response was: "No, I didn't."

Although the inquiry could have been more clearly phrased, viewing the question and response in the light most favorable to plaintiffs' claim, this testimony was sufficient to permit a finding that neither plaintiff Tucker nor anyone at her direction had done anything to the installation after it had been completed. This testimony would have been sufficient to negative the possibility that she or someone acting at her request had driven a nail

into the wiring, had mashed it with a hammer or had bent it, three of the possibilities suggested by Doctor Koopman.

Although respondent argues that Doctor Koopman's testimony included lightning and external heat as possible causes of the arcing, his testimony also explained why he did not consider either of these to have been likely causes and was sufficient to exclude them as reasonably probable causes.

The matter of electric surging or over voltage was related by Doctor Koopman to a "weak spot in the insulation." Again, if there is no evidence that others, such as Mrs. Tucker, might have been responsible for such weak spot, it could be reasonably assumed that such condition existed upon the installation of the cable. Although Doctor Koopman did not expressly so testify, we think it reasonable that his reference to moisture as a possible cause would inferentially have involved a weakness or defect in the insulation which permitted moisture to enter.

In our opinion the testimony of Doctor Koopman was sufficient to permit the jury to find that the more reasonable probability was that the fire resulted from a defect in the cable for which defendant was responsible, i. e., which existed at the time of installation of the cable. Such was the burden of plaintiffs. They were not required to produce "absolutely positive" proof. "The finding, however, must be based upon probative facts, and a verdict founded on speculation and conjecture cannot stand. American Cyanamid Co. v. Fields, supra [4 Cir., 204 F.2d 151]. Probative facts may be established by circumstantial evidence, and while circumstantial evidence need not have the quality of absolute certainty, Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292, the circumstances must point to the desired conclusion with such a degree of certainty as to make that conclusion reasonable and probable and must rise above the stature of guesswork, speculation or

surmise. Gray v. Williams, Mo.App., 289 S.W.2d 463. Plaintiff's evidence must be viewed in the light most favorable to him, and he is entitled to the benefit of all inferences reasonably arising from the evidence. American Cyanamid Co. v. Fields, supra." Green v. Ralston Purina Company, Mo.Sup., 376 S.W.2d 119, 123–124 [1–4]. Koopman's testimony was substantial evidence justifying a submission of plaintiffs' cause.

The cases relied upon by respondent are not here controlling. In the cases of Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615, and Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, the expert witness relied upon had based his opinion testimony upon physical facts which were, in turn, based upon conjecture and speculation. Here, plaintiffs' witness testified clearly to the physical facts which he found and then, based upon his qualifications as an expert, expressed his opinion as to the probable cause of the physical facts found by him. In Craddock v. Greenberg Mercantile, Inc., Mo.Sup., 297 S.W.2d 541, 548, the deductions of the expert were not warranted by the physical facts upon which he relied. In addition, the expert had assumed conditions to exist, contrary to the positive testimony of plaintiffs' other witnesses as to the condition in question. That is not the situation of this case.

Undoubtedly, Doctor Koopman's testimony did not pinpoint the exact cause of the arcing. However, it was sufficient, in the light of Mrs. Tucker's testimony, to permit the jury to infer that the cause was a defect for which defendant was responsible.

As above stated, we find Doctor Koopman's testimony that the fire was the result of the arcing sufficient to permit a finding on that issue. In response to a question he stated:

"My conclusion was that out of the arcing to the cable end to the refrigerator compressor motor and fan we got heat at

the spot of over 2,000 degrees and flames, and this set the curtain afire and the fire traveled upward on the curtain, and started at the ceiling of the basement or the floor of the rooms above to burn—the rafters to burn. This fire traveled over and involved the circuits on the larger box."

His testimony on cross-examination showed that other possible causes had been considered by him. Without detailing his testimony on such matters as the possibility that the fire originated in the main fuse box and the reason for his rejection of such theory, we find that his testimony that the arcing in the Romex cable caused the fire was sufficiently certain to permit a finding on that issue in accordance with his testimony.

Reversed and remanded.

HOUSER, C., concurs in result.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C. is adopted as the opinion of the Court.

All of the Judges concur.